# HALLORAN-JUDGE TRUST CO. v. HEATH et al.

No. 4531.   Decided July 9, 1927.   (258 P. 342)

*Dan B. Shields* and *D. M. Draper*, both of Salt Lake City, for appellant.

*P. T. Farnsworth, W. Q. Van Cott*, and *Grant Bagley*, all of Salt Lake City, for respondents.

THURMAN, C. J.

This is an action for an accounting and for injunctive relief. The complaint in substance alleges that plaintiff is a corporation; that defendants are the executors of the estate of Virtue Clift; that on the ———— day of August, 1920, Virtue Clift was the owner of certain property in Salt Lake City, describing it by metes and bounds; that on said day, during her lifetime, being desirous of borrowing $150,000 to protect herself against liens and expensive litigation in connection with the completion of the building thereon, and having no security to offer except a second mortgage on said property, she employed the plaintiff, in writing, to float a bond issue secured by a second mortgage on said property, and in consideration of the services to be rendered by plaintiff in securing said loan and for the further security and protection of buyers of said bonds, said Virtue Clift agreed that plaintiff should have full control and management of said property, including the writing of insurance thereon, for a period of ten years; that during said ten-year period plaintiff agreed to collect all the rents and income from said property and apply the same in the liquidation of all accounts and claims which threatened to become liens against said property in order that the security for

said mortgage should not in any way be decreased in value, and finally to pay said bonds and obligations of said Virtue Clift; that in consideration of said agreement the said Virtue Clift agreed to pay to plaintiff 5½ per cent. of the gross income from said property for a period of ten years from September 10, 1920; that it was agreed that plaintiff should have a fixed, settled interest in said estate to the extent of 5½ per cent. of the gross income therefrom during said period of time; that on April 27, 1926, without regard to plaintiff's rights, defendants served notice upon the tenants of the building on said property that the authority of plaintiff to manage and control said property and to collect rentals therefrom was terminated and revoked by the death of Mrs. Clift, and that thereafter all rentals would be payable to and would be collected by the aforesaid executors of her estate. It was further stated in the notice that all matters pertaining to leases and management of the property would in the future be handled directly by said executors.

It is further alleged, in substance, that as a result of such notice a large number of the tenants in said building did not pay rent to the plaintiff, but paid the same to the defendants, and plaintiff was advised that defendants had collected the sum of $2,212.50 upon which there was owing to plaintiffs $121.68, or 5½ per cent. of said amount, and that defendants refused, on demand, to pay said sum to the plaintiff. Plaintiff also alleged that defendants had collected other sums of money and were assuming the management of said Clift building and refused to inform plaintiff as to the amount so collected, and were in all respects attempting to impair, abrogate, and nullify the contract of employment entered into between the said Virtue Clift and plaintiff, and that unless restrained by order of court defendants would abrogate and nullify the aforesaid contract.

Plaintiff further alleged that defendant, Lawrence Heath, in his individual capacity, claimed some interest in the contract with plaintiff.

For a second cause of action plaintiff alleged, substantially, the same matters alleged in its first cause of action, and in addition thereto alleged that on the ——— day of August, 1920, the said Virtue Clift assigned, sold, and set over unto the plaintiff 5½ per cent. of the gross income of said Clift building for a period of ten years.

Plaintiff prays: (1) For a judgment against defendants for the sum of $121.68; (2) that defendants be required to account to plaintiff for money collected from said tenants and pay the same to the plaintiff; and (3) that defendants be restrained from in any manner interfering with the plaintiff in exercising its control and management in the collection of rent from the tenants of said building or in any manner interfering with plaintiff in fully complying with the terms of said contract. The same prayer is made as to each cause of action.

Defendants answering the first cause of action alleged in the complaint admit the corporate capacity of plaintiff and the capacity of defendants, as alleged, and admit that Virtue Clift was at the time alleged in the complaint the owner of the real property therein described; admit that they served notice on the tenants of said property, as alleged in the complaint; and deny the remaining allegations of said first cause of action. Answering the second cause of action defendants make the same admissions respecting the capacity of plaintiff and defendants and the ownership of the property by Virtue Clift, but deny that she ever at any time assigned, sold, or set over unto the plaintiff any part of the income of said Clift building, or any other property, for a period of ten years, or any other period whatsoever.

Defendants admit that plaintiff procured the said loan of $150,000 upon the security of a second mortgage on the property; they admit that they collected from the tenants in said building the sum of $2,212.68, and that they are proceeding to collect other money from said tenants, as alleged in the complaint; they deny each and every other allegation in the said second cause of action. Further answering said

complaint, and as an affirmative defense, defendants in substance allege that at all times therein stated Virtue Clift was the owner of the property described in the complaint upon which there was, and now is, an office building known and described as the Clift building;. that on or about September 10, 1920, the plaintiff and A. Roy Heath and Virtue Clift entered into an agreement in writing, which for convenience will be referred to herein as Exhibit A. The agreement in words and figures is as follows:

"This agreement, between Virtue Clift and Halloran-Judge Trust Company, a corporation, witnesseth:

"The said Virtue Clift is the owner of what is popularly known as the Clift corner, situate at the northwest intersection of Main and Third South streets in the city and county of Salt Lake, Utah, and she is desirous of raising money by a second mortgage on said property, the same not to exceed the sum of $150,000 and the details of said mortgage or trust deed are fully set forth in a certain indenture of trust and mortgage between the parties hereto dated September 7, 1920, and which is hereby referred to and made a part hereof. And in consideration of the premises, Virtue Clift hereby sells the bonds secured by said mortgage, to wit, $150,000, at par, to said company and said company hereby agrees to purchase at par said bonds for the total purchase price of $150,000. The said Virtue Clift, however, will not be requested by said company to sell more of said bonds than may be necessary to sell in the judgment of said company for the purpose of discharging all of the debts, liabilities and obligations of the said Virtue Clift. Virtue Clift, by a separate instrument in writing of even date herewith and which is hereby referred to and hereby made a part hereof, has appointed said company and A. Roy Heath her joint agents and representatives for a period of ten years to have the control and management of said property, and Virtue Clift hereby agrees to pay and allow a commission to said joint agents the sum of 5½ per cent. on all rental collections, the same to be paid monthly. Virtue Clift further agrees that all funds belonging to her and now on deposit with Tracy Loan & Trust Company shall be immediately transferred to said company. Such funds are to be immediately used towards the liquidation of the indebtedness against the Clift building situate on said property, and any cash payment received from Western Union Telegraph Company in settlement of improvements paid for by Virtue Clift shall be deposited with said Halloran-Judge Company, which

fund shall be immediately used towards the liquidation of the indebtedness against said Clift building. Said company further agrees that the funds or so much thereof as may be necessary derived from the sale of said bonds shall be used immediately in the payment of all claims, liens and other indebtedness against said Clift building. If any funds should remain on hand after the liquidation of all indebtedness, then such funds shall be used immediately for the retirement of any of said bonds.

"Said company further agrees that whatever fund or funds may remain after the payment of all taxes, interest, operating charges or expenses of any kind whatsoever shall be used at opportune times for the purchase and retirement of said bonds.

"Virtue Clift agrees that any and all insurance which shall be taken out for her protection as well as any insurance written for her benefit, upon the above mentioned building, or any portion thereof, during the term of this contract, whether for fire, accident or otherwise, shall be placed with and written by said company.

"Said trust deed shall be made, executed, delivered, and recorded at the expense of Virtue Clift, and thereupon the full issue of said bonds shall be executed and delivered to said company as rapidly as the same can be prepared.

"Virtue Clift shall be liable for and pay, without cost or expense to said company, all attorney's fees, costs, and expense in connection with the issuance and delivery of said bonds.

"A certain agreement in writing between said parties dated March 28, 1919, hereby referred to and hereby made a part hereof is hereby canceled and annulled.

"Said company agrees that it will pay Virtue Clift during her natural life from the rental proceeds of said building a monthly sum of $500, to be paid monthly, and if such amount should not be sufficient during her illness or extraordinary circumstances, then said company agrees to pay her from said rental proceeds a sum not to exceed $1,000 per month during her natural life.

"This agreement shall be binding upon and inure to the benefit of the grantees, successors, assigns, heirs, and personal representatives of the parties hereto.

"In witness whereof, said parties have hereunto set their hands this September 10, 1920, and executed this agreement in duplicate."

The separate instrument in writing referred to in Exhibit A and made part thereof is a power of attorney given by Virtue Clift to plaintiff and A. Roy Heath, jointly, for

a period of ten years, giving to them the sole and exclusive management of the Clift building, with full authority to act as her agents in all matters pertaining to said property. The power of attorney especially authorizes them during the life of the contract to make, adjust, and compromise any and all leases pertaining to said property, to collect rents therefrom, and authorizes them to execute any and all contracts pertaining to leases on said property with the same power, force and effect as if she herself had executed the same.

Defendants further alleged that said agreement contains all of the promises, obligations, rights and duties of the plaintiff and the said Virtue Clift relating to the matters set forth in plaintiff's complaint, and all representations, negotiations, tentative agreements, and oral understandings were merged and embodied in said written agreement; that thereupon the plaintiff and the said A. Roy Heath entered into an agreement in writing the effect of which was that said A. Roy Heath should collect the rents, keep the books, turn over daily all moneys so collected, and render to plaintiff a financial statement on the 1st day of every month. It was further agreed that Heath was to consult plaintiff on all important matters, or on any matter when requested by plaintiff. The contract, Exhibit A, was referred to and made a part of the agreement, and the 5½ per cent. commission referred to in said Exhibit A was to be divided between them, 3½ per cent. to plaintiff and 2 per cent. to Heath. In the event that Heath ceased to perform the duties assigned to him the plaintiff was to act alone and receive the entire commission. The agreement between plaintiff and Heath contained this further statement:

"The moving consideration for this contract is the effort put forth by the parties hereto, each for the other, in securing joint contract from the said Virtue Clift for the agency and management of said Clift building."

It was also expressly stated in said agreement between plaintiff and Heath that the purpose of the agreement was

to definitely define the rights and powers of each of them under the contract, Exhibit A.

It is then alleged in defendants' answer that thereafter on December 5, 1924, and while said agreement was in full force and effect, the said A. Roy Heath died, and defendants, on information and belief, allege that upon his death plaintiff's power to manage and control the Clift building and collect the rentals therefrom was terminated and revoked. The answer further alleges that upon the death of said A. Roy Heath the plaintiff and defendant Lawrence H. Heath, and the said Virtue Clift, entered into an agreement in writing which agreement purported to give jointly to plaintiff and Lawrence H. Heath the sole and exclusive management of the property, together with all other rights mentioned in the contract, Exhibit A, which contract was to remain in full force and effect "except as herein modified." This agreement contained the following provision: ·

"If the said Lawrence H. Heath should die, or for any reason fail to act as such agent, then (1) it shall not terminate the said agency or rights of said Halloran-Judge Trust Company, as specified in said instrument; and (2) said Virtue Clift, or, in case of her death, her personal representatives, may from time to time appoint a successor or successors to take the place of said Lawrence H. Heath.

It is alleged also in the answer that, upon the execution of said agreement, an agreement in writing was entered into between plaintiff and Lawrence H. Heath with reference to the proportion of compensation to be received by each for services to be performed under the contract, Exhibit A. Reference to said agreement between plaintiff and Lawrence H. Heath discloses that Lawrence H. Heath was to occupy the same position and have the same rights and duties under the contract, Exhibit A, as the said A. Roy Heath had under said contract. All of said contracts are in writing, attached to, and made part of defendants' answer.

It is further alleged in the answer that Virtue Clift died testate October 23, 1925, and that the authority of plaintiff

to manage and control the Clift building and collect the rents therefrom was thereby terminated and revoked; that on November 13, 1925, the last will and testament of Virtue Clift was duly admitted to probate in the district court of Salt Lake county; that letters testamentary were issued to defendants, who duly qualified as executors of said last will and testament, and who ever since have been, and now are, duly appointed, qualified, and acting as such executors; that due notice to the creditors of said Virtue Clift was given as required by law, and decree of court to that effect has been duly made and entered, and that the time within which such creditors were required to present their claims expired long prior to the commencement of this action; that no claim of any kind has ever been presented to any of the representatives of the estate by the plaintiff, or any one in its behalf; that the causes of action set forth in plaintiff's complaint, and each of them, are barred by reason of the failure of plaintiff to present any claim to the defendants, as required by law.

Defendants pray judgment that plaintiff take nothing by its complaint and that the same be dismissed with prejudice and without costs. Defendants pray for further equitable relief not necessary to sepecify in this connection.

Replying to the first allegation in the affirmative defense of defendants' answer, plaintiff denies the same, and denies that Exhibit A contains all the promises, obligations, rights and duties of the plaintiff and said Virtue Clift relating to the matters set forth in plaintiff's complaint, and denies that it contains all the representations, negotiations, tentative agreements and oral understandings between the plaintiff and Virtue Clift, or that the same were merged and embodied in said contract, Exhibit A, and denies that by the death of A. Roy Heath plaintiff's authority to manage said Clift building and collect rents therefrom was terminated and revoked. For lack of complete information thereon, plaintiff denies allegation 10, which alleges facts tending to show that plaintiff's causes of action were barred for fail-

ure to present its claim to the executor of said estate within the time required by law.

The foregoing statement of the pleadings refers to all the contracts and agreements between the parties that appear to be material.

The case was tried to the court without a jury. The court found the issues in favor of the defendants. Judgment was entered on the findings, and plaintiff appeals.

The respondents rely, principally, on the written contracts attached to and made part of their answer.

Appellant relies, not only on the same documentary evidence, but also upon oral testimony as to conversations between plaintiff's representatives and Virtue Clift in negotiations leading up to the execution by the parties of the contract, Exhibit A, which we have quoted at length. The testimony as to these conversations was objected to by the respondents on the grounds that it tended to vary the terms of the written contract between the parties. Appellant's contention was that it was a case in which parol evidence was admissible to explain ambiguities. The court overruled the objection, pro forma, and admitted the evidence. The record does not disclose that the question was afterwards determined by the court, except as it may be determined from the findings. Finding No. 4, as far as material here, reads as follows:

"That said written agreement marked Exhibit 1 contains all of the promises, obligations, rights and duties of the plaintiff and the said Virtue Clift touching or in any manner relating to any of the matters set forth in plaintiff's complaint, and all representations, negotiations, tentative agreements and oral understandings between the parties thereto were merged and embodied in said written agreement."

Exhibit 1, referred to by the court, is the agreement herein referred to as Exhibit A. This finding of the court is assigned as error on the ground that it is not justified by any evidence in the record. By the finding the trial court evidently concluded that the oral testimony was, in sub-

stance, either the same as the written contract (in which case there could be no prejudice), or that the testimony varied the terms of the written contract under circumstances in which parol evidence was inadmissible.

In its complaint appellant bases its causes of action on a purported contract, in writing, of date August ———, 1920. No writing of such date was offered in evidence. In these circumstances, and from the nature of the allegations of the complaint in other respects, respondents no doubt assumed, and had the right to assume, that the contract declared on was the contract Exhibit A. The following excerpt copied from the brief of appellant illustrates the character of the oral testimony as interpreted by appellant:

"It cannot be emphasized too strongly that all the writings introduced at the trial of this case were the outgrowth of a previous agreement amply proved in parol, and that said writings merely carry into effect the first original agreement."

That being the case, the finding of the trial court which we have quoted was not error, especially as no ambiguity appears on the face of the contract. Nothing is better settled in the law, where there is a contract in writing, than that all preliminary negotiations are merged in the written contract.

Appellant's contention is that its authority and power to manage and control the Clift building and collect the rents therefrom for a period of ten years is coupled with an interest in the subject-matter of the agency and was not terminated or revoked by the death of Mrs. Clift. Respondents contend that the power conferred was not coupled with interest in the subject-matter, and for that reason it terminated with the death of Mrs. Clift.

The parties agree that the rent of the building was the subject-matter of the agency. They also agree that unless the power conferred is coupled with an interest in the rents for a period of ten years from the execution of the contract, the power and authority of the plaintiff terminated

on the death of Mrs. Clift. But the question is, How shall the law be applied in the instant case? The solution of this question renders it necessary to briefly consider a few of the cases cited, the authority of which is not questioned by either of the parties.

The leading case on the subject is conceded to be *Hunt* v. *Rousmanier*, 8 Wheat. 174, 5 L. Ed. 589, opinion by Mr. Chief Justice Marshall. In that case it appears the plaintiff loaned Rousmanier on one occasion the sum of $1,450 and on another occasion the sum of $700, accepting promissory notes therefor, Rousmanier at the same time agreeing with the plaintiff to give his specific security on two vessels then at sea, and offered such security in the form of a mortgage or bill of sale. It was a parol agreement except as to the promissory notes. Instead of taking a mortgage or bill of sale as security, under advice of counsel plaintiff, three days after the execution of the notes, accepted from Rousmanier a power of attorney authorizing him to make and execute a bill of sale for three-fourths of the vessels to himself, or any other person, and in the event of said vessels being lost to collect the money which should become due on a policy by which the vessels and freight were insured. The power of attorney also contained a proviso reciting that the power was given as collateral security for the payment of the notes already mentioned and was to be void on their payment. In the event the notes were not paid the plaintiff was to retain the amount thereof, and all expenses, out of the proceeds property and return the residue to Rousmanier. The notes were not paid, and before the power of attorney could be executed Rousmanier died insolvent. Plaintiff gave notice of his claim, and on return of the vessels took posession thereof and offered his interest therein for sale. Defendants forbade the sale, and plaintiff filed a bill in equity to compel defendants to join in the sale. Such were the facts in that case, and they were admitted by defendants' demurrer. The demurrer was sustained, judgment entered, and the bill dismissed. The question on appeal was

the same as the question presented here. Was it a power coupled with an interest in the subject-matter of the agency?

The principal contention of the respondent in that case seems to have been that the power of attorney, on its face, did not show a power coupled with an interest in the subject-matter. Upon that contention the court, at pages 201, 202, of the report, said:

"This instrument contains no words of conveyance or of assignment, but is a simple power to sell and convey. As the power of one man to act for another depends on the will and license of that other, the power ceases when the will, or this permission, is withdrawn. The general rule, therefore, is, that a letter of attorney may, at any time, be revoked by the party who makes it; and is revoked by his death. But this general rule, which results from the nature of the act, has sustained some modification. Where a letter of attorney forms a part of a contract, and is a security for money, or for the performance of any act which is deemed valuable, it is generally made irrevocable in terms, or if not so, is deemed irrevocable in law. Although a letter of attorney depends, from its nature, on the will of the person making it, and may, in general, he recalled at his will, yet, if he binds himself for a consideration, in terms, or by the nature of his contract, not to change his will, the law will not permit him to change it. Rousmanier, therefore, could not, during his life, by any act of his own, have revoked this letter of attorney. But does it retain its efficacy after his death. We think it does not. We think it well settled, that a power of attorney, though irrevocable during the life of the party, becomes extinct by his death."

After disposing of the question as to whether the letter of attorney alone constituted a power coupled with an interest, the court, at page 203, proceeds to define what is meant by a "power coupled with an interest." The opinion continues:

"This general rule, that a power ceases with the life of the person giving it, admits of one exception. If a power be coupled with an 'interest,' it survives the person giving it, and may be executed after his death. As this proposition is laid down too positively in the books to controverted, it becomes necessary to inquire what is meant by the expression, 'a power coupled with an interest.' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power?

We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be ingrafted on an estate in the thing.

"The words themselves would seem to import this meaning. 'A power coupled with an interest,' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person. But if we are to understand by the word 'interest', an interest in that which is to be produced by the exercise of the power, then they are never united. The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases when the interest commences, and, therefore, cannot, in accurate law language, be said to be 'coupled' with it.

"But the substantial basis of the opinion of the court on this point, is found in the legal reason of the principle. The interest or title in the thing being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the substitute, therefore, which, in such a case, is the act of the principal, to be legally effectual, must be in his name, must be such an act as the principal himself would be capable of performing, and which would be valid if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest, or estate, passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. The estate, being in him, passes from him by a conveyance in his own name. He is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his estate. The legal reason which limits power to the life of the person giving it, exists no longer, and the rule ceases with the reason on which it is founded. The intention of the instrument may be effected without violating any legal principle."

The court, after discussing at considerable length the law relating to various equitable principles including that of relief from mistakes, arrives at the conclusion that in that case the power was coupled with an interest in the subject-matter, and at page 216 uses the following language:

"In this case, the fact of mistake is placed beyond any controversy. It is averred in the bill, and admitted by the demurrer, that 'the powers of attorney were given by the said Rousmanier, and received by the said Hunt, under the belief that they were, and with

the intention that they should create a specific lien and security on the said vessels.' "

The decree of the circuit court, from which the case was appealed, was reversed and annulled and the cause remanded, with directions to permit the defendants to withdraw their demurrer and answer the bill of complaint. The decision in that case has been subjected to more or less criticism for the assumption that a court of equity has power to award relief for a mistake of law, the mistake of law being that plaintiff was advised that a power of attorney was as safe security as a mortgage or bill of sale. But whatever criticism has been made as to that feature of the decision, the courts have generally indorsed and applied the rule enunciated in the opinion as to the effect of a power of attorney and the meaning of the term "a power coupled with an interest." The vital distinction between that case and the case at bar is that in that case Rousmanier was actually indebted to Hunt and agreed to give him security on the vessels. It would have been a palpable perversion of the plain meaning and intention of the parties to have held that the power conferred on Hunt was not coupled with an interest in the subject-matter of the agency.

The instant case is altogether different. The contract, Exhibit A, discloses no semblance of a present indebtedness to the plaintiff nor the conveyance of any estate. It is simply a contract for certain services to be performed by appellant, for which Virtue Clift was to pay a certain compensation as the services were performed. The contract shows that Virtue Clift was desirous of borrowing $150,000 on the security of a second mortgage on the Clift building. The trust deed for a bond issue is referred to. It is then recited, in effect, that in consideration of the premises she sells to the plaintiff the bonds secured thereby to the extent of $150,000, if that sum is necessary to discharge all of her debts and liabilities. The bonds drew interest at 8 per cent. If we regard the above as a severable portion of

the contract, the consideration therefor appears in the contract itself. The bonds were payable in five years, were sold by plaintiff at par, and redeemed at or before maturity.

The next provision of the contract gives to plaintiff and A. Roy Heath the sole agency, for a period of ten years, to manage and control the property, for which Virtue Clift agrees to pay a commission of $5\frac{1}{2}$ per cent. of all rental collections to be paid monthly. Here again the contract fixes the consideration. Virtue Clift further agrees that all insurance upon the building shall be written by the plaintiff. The consideration, of course, is implied.

The above are the material features of the contract relating to the question as to whether or not the power and authority given to plaintiff was coupled with an interest or estate in the subject-matter of the agency. If, as agreed by the parties, the rentals of the building are the subject-matter of the agency, the question is, Does plaintiff have an interest or estate therein independent of the power conferred upon it, or does its interest or estate accrue by its exercising the power conferred? The contract provides that plaintiff's commission shall be $5\frac{1}{2}$ per cent. of the rental payable monthly. The plaintiff is not to be paid until the rentals are collected; or, in other words, not until plaintiff's power to collect has been successfully exercised and its authority in relation thereto extinguished. It is a typical illustration of the rule announced by Mr. Chief Justice Marshall in *Hunt* v. *Rousmanier,* supra:

"The power, to produce the interest, must be exercised, and by its exercise, is extinguished. The power ceases when the interest commences, and, therefore, cannot, in accurate law language, be said to be 'coupled' with it."

Appellant relies on the following cases in support of its contention that the power conferred on the plaintiff was coupled with an interest: *Babrowsky* v. *U. S. Grand Lodge,* 129 App. Div. 695, 113 N. Y. S. 1080; *Knapp* v. *Alvord,* 10 Paige Ch. (N. Y.). 205, 40 Am. Dec. 241; *Sphier* v. *Michael,*

112 Or. 299, 227 P. 1062, 229 P. 1100; *Shepherd* v. *McNoil*, 122 Mo. App. 418, 99 S. W. 494; *Boehm* v. *Spreckels*, 183 Cal. 239, 191 P. 5; *Spurr* v. *Pryor & Stokes*, 104 Okl. 68, 230 P. 267. All of these cases are distinguishable from the case at bar, for in every case where the donee of the power was granted relief it satisfactorily appeared that the power was coupled with an interest in the subject-matter of the agency, independent of the power itself. Such cases fall clearly within the principle announced by Mr. Chief Justice Marshall, in which the power is not revoked by the death of the principal.

For the reasons stated, we are impelled to the conclusion that plaintiff is not entitled to the relief prayed for, in this form of action. This is an equitable proceeding and while the specific relief sought is for an accounting and for an injunction restraining defendants from interfering with plaintiff's right to manage and control the property in question, the effect of the proceeding is to enforce a specific performance of the contract. Inasmuch as we are compelled to hold that the contract is merely one for services to be rendered, for which the compensation is expressly stated in the contract itself, we are of opinion it is not a case in which equitable relief can be granted. For instance, let us reverse the situation and assume that plaintiff had breached the contract by refusing to perform the service. In such case could plaintiff, at the instance of respondents, be compelled by a court of equity to specifically perform the service? We think not. If plaintiff could not be compelled defendants cannot be compelled. There must be mutuality or specific performance, ordinarily, will not be enforced. 25 R. C. L. p. 33 et seq. Besides this, the law affords a complete and adequate remedy in cases of this kind. That alone is grounds for denying the relief prayed for here. In R. C. L., supra, at page 229, it is said:

"The right to specific performance is essentially an exceptional one, and a decree for such relief is given instead of damages only when by this means a court can do more perfect and complete jus-

tice. Ordinarily, to entitle one to specific performance of a contract, he must show that a recovery of damages for its breach will not be an adequate remedy. If .the breach of an agreement can be compensated for in damages specific performance will be denied."

Hence, we are of opinion if plaintiff is entitled to any relief it can only be obtained in an action at law. The present value of the contract is easily ascertainable. The compensation is definitely fixed, and the expense incident to performing the service, in view of plaintiff's experience in the service thus far performed, can be approximately determined. As far as these features are concerned it appears to be a typical case for relief in an action at law. While it is a matter largely in the discretion of the court whether it will grant the relief prayed for in an action for specific performance, nevertheless such relief should not be granted in disregard of well established rules pertaining to proceedings in equity.

We are therefore of opinion the specific relief sought for in this proceeding should be denied.

It is also contended by respondents, and pleaded in their answer, that appellant presented no claim to the executors within the time stated in the notice, as provided by law, and that therefore the action is barred. It is admitted by appellant that no claim was presented, but it is contended that appellant was not obligated to present its claim for the reason that the breach of the contract by the executors did not occur until after the time had expired; that therefore it had no cause of action against the estate, within the time required by the notice. There is much reason, as well as apparent justice, in this contention, but if the court is powerless, by reason of express provisions of the statute, to grant relief, the contention is unavailable irrespective of the apparent justice of the contention.

Comp. Laws Utah 1917, § 7648, provides, in part:

"All claims arising upon contracts, whether the same be due, not due, *or contingent*, must be presented within the time limited in the

notice, and any claim not presented is barred forever." (Italics Supplied.)

Section 7655 provides:

"No holder af any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator. * * * " (Remaining part immaterial.)

The above statutes were adopted from the California Code of Civil Procedure, §§ 1493 and 1500.

The claim of appellant here was a contingent claim during the period within which claims sheuld be presented.

In the note to Woerner's American Law of Administration (3d Ed.) vol. 2, at page 1276, a contingent claim is well defined, as follows:

"A contingent claim is where the liability depends upon some future event, which may, or may not, happen, and therefore makes it wholly uncertain whether there ever will be a liability."

In *Verdier* v. *Roch*, 96 Cal. 467, 31 P. 554, a similar question was involved under the sections of the Civil Code above referred to. The court reviewed former legislation and previous decisions and pointed out why the Legislature had amended the statute which theretofore provided that contingent claims might be presented within a certain time after they became absolute. In concluding its opinion, on page 497, 31 P. 558, the court gives the following reasons for the change in the law:

"In conclusion, it may be remarked that if contingent claims are not to be entirely ignored in the administration of estates, it is quite as important that they should be presented for allowance, as that absolute claims should be presented. Otherwise, how is any provision whatever to be made for them before the estate is settled? Timely notice of all claims which may prejudicially affect an estate should be given to the administrator, so that he may have an opportunity to investigate their merits, and to contest them, if advisable, before the evidence of their invalidity shall be lost. That they should be forever barred if not presented within the time prescribed by law is surely no greater hardship than that absolute claims should be so barred."

See, also, Estate of Hincheon, 159 Cal. 755, 116 P. 47, 36 L. R. A. (N. S.) 303.

The case of *Verdier* v. *Roach,* supra, is severely criticized in *Nathan* v. *Freeman,* 70 Mont. 259, 225 P. 1015, 41 A. L. R. 138, relied on by appellant here.

The Montana statute was identical with our statute and the California statute, supra. The Montana court, apparently, felt constrained to administer abstract justice in the case, notwithstanding the plain, unambiguous words of the statute.

While we are of opinion provision should be made for such cases by appropriate legislation we are unwilling, in view of the limitations upon our power, to take that duty upon ourselves. We cannot avoid the conclusion that the statute is susceptible of no other interpretation than that contingent claims must be presented to the executor or administrator within the time required by law, and that plaintiff herein is barred by failure to present its claim in time.

In view of this conclusion this opinion is, no doubt, subject to criticism as it might be assumed that we could have determined the case without reviewing all the questions submitted. Such, however, would be an erroneous view to take. Before determining the question on the statute of limitations it was necessary to determine whether or not plaintiff had an interest in the subject-matter, and if so, whether it was in the nature of a lien or equitable assignment. If so, it is doubtful if presentation of a claim would be necessary under the statute. Besides, many of the questions presented are new in this jurisdiction and involve important questions relating to the powers and duties of executors and administrators, and are necessary to be determined.

The judgment of the trial court is affirmed.

CHERRY, STRAUP, HANSEN, and Gideon, JJ., concur.