Alma Glenn PRATT, Plaintiff
and Respondent,

v.

BOARD OF EDUCATION OF the UIN-
TAH COUNTY SCHOOL DISTRICT,
Defendant and Appellant.

No. 14469.

Supreme Court of Utah.

May 4, 1977.

Merlin R. Lybbert and George A. Hunt, of Worsley, Snow & Christensen, Salt Lake City, for defendant-appellant.

Michael T. McCoy, A. M. Ferro, Salt Lake City, for plaintiff-respondent.

MAUGHAN, Justice:

Plaintiff brought this action against the Board of Education of the Uintah County School District, hereafter defendant. Plaintiff sought damages for breach of contract, and reinstatement to his teaching position. His prayer for relief was granted. We affirm. Costs to plaintiff. All statutory references are to U.C.A.1953.

Plaintiff was employed by defendant as a tenured teacher at the Whiterocks School. He had taught there for a period of fourteen years. He was informed in the spring of 1973 that Whiterocks was being closed, and he must make a written application, if he desired to continue employment with defendant. In a letter, dated April 1, 1973, plaintiff applied for a teaching position at the new school, which was being constructed to replace Whiterocks. The superintendent, employed by defendant, spoke with plaintiff and expressed concern about plaintiff's experience with team teaching. This technique was to be used at the new school. Precisely what occurred at this meeting became an issue of fact, which was resolved by the jury adversely to defendant.

Plaintiff was not given a contract for the 1973–1974 school year. After exhausting his administrative remedies, pursuant to the Utah Orderly School Termination Procedures Act, Chapter 51, Title 53, as enacted 1973, plaintiff filed his action.

His claim for breach of contract was predicated on a policy of defendant, incorporated by reference into plaintiff's employment contract. Under this policy, the board had the right, when it was necessary, to decrease the number of tenured teachers. However, a tenured employee was not to be dismissed; while a non-tenured employee was retained, or employed, to render a service the tenured employee was certificated and competent to render.

There is no dispute between the parties that plaintiff was a tenured teacher and that non-tenured teachers were employed by the district to perform services, plaintiff was qualified to render. Defendant's sole defense to the asserted breach was that plaintiff had voluntarily resigned. This issue was submitted to the jury which by special verdict found plaintiff had not resigned.

Defendant asserted unsuccessfully in a motion to dismiss and a motion for summary judgment that plaintiff's claim was barred for failure to comply with the notice provision of Sec. 63–30–13, as enacted 1965, of the Governmental Immunity Act. The trial court ruled the act did not apply to this case. Defendant contends such a ruling was erroneous.

Under defendant's theory, which it asserted before the trial court, timely compliance with Sec. 63–30–13, required plaintiff to file his notice of claim of breach of contract, within ninety days after the superintendent informed him his contract was terminated. The parties disagreed as to whether the date plaintiff was so notified was April 27 or May 11, 1973. Defendant's position was plaintiff did not file a notice of his claim, which complied with the requirements set forth in *Scarborough v. Granite School District*,[1] until September 24, 1973. Since this was more than ninety days after the alleged oral notice of termination, even if it were assumed to have occurred on May 11, 1973 as claimed by plaintiff, defendant asserted plaintiff's claim was barred as a matter of law.

The trial court did not err in its ruling as applied to the facts of this case. In making this determination the court had before it the pretrial order with a statement of uncontroverted facts. They were:

1. Utah, 531 P.2d 480 (1975).

On June 27, 1973, a letter was received by defendant from the Uintah Education Association requesting a hearing on behalf of the plaintiff regarding his termination. On August 14, 1973, a second request for hearing was received from Mr. Pratt personally, and the hearing was then held on September 5, 1973. At the hearing, Mr. Pratt was again informed that he was terminated and that there were no new openings. On September 24, 1973, the plaintiff sent a letter to the Board demanding reinstatement and claiming wrongful termination. The Board responded to plaintiff's letter with another letter dated September 25, 1973, and again gave its reasons for not renewing plaintiff's teaching contract. No other or further correspondence or notices were received by defendant from the plaintiff until December 14, 1973, when plaintiff's attorney wrote to the Uintah County School District demanding that his client be reinstated and that he be compensated for wages he would have received from September to December of 1973. The Uintah School District declined to take affirmative action on the plaintiff's demand letter inasmuch as they felt the plaintiff had been properly terminated and that such termination had been in accordance with the plaintiff's expressed intentions as communicated to Superintendent Evans. Plaintiff disagreed and this action was filed on April 19, 1974.

Plaintiff, under defendant's personnel policies, had a reasonable expectation of employment in successive years. Under the Utah Orderly School Termination Procedures Act, supra, plaintiff was entitled to a fair hearing, q. v. Sec. 53–51–5(1). If the trial court had sustained defendant's assertion, the ninety-day period of Sec. 63–30–13 would have passed prior to the hearing defendant was required to give plaintiff pursuant to Sec. 53–51–5(1). Section 53–51–2, provides:

The purpose of this act is to require school districts to adopt orderly termination procedures and to specify standards of due process and causes for termination.

■ To effect these purposes the legislature provided for an administrative hearing. Under the particular facts of this case, the action of defendant constituted both an improper termination and a breach of contract. There was a prescribed administrative remedy for the threatened injury to plaintiff, which he timely sought. Until defendant held the hearing and issued its written determination on September 25, 1973, plaintiff's claim for a breach of contract did not mature. The trial court properly ruled that plaintiff's failure to file a notice of claim, within ninety days after May 11, 1973, did not bar his claim.

■ Defendant contends the trial court erred in ordering plaintiff's reinstatement. Defendant characterizes the order as one for specific performance of an employment contract, and invokes the doctrine of mutuality of remedies.[2] The effect of the order of the court was to enforce a negative covenant, viz., defendant would not dismiss a tenured teacher and employ or retain a non-tenured teacher. The order of the court nullified the dismissal of plaintiff.

. . . there is support for the rule that breach of a negative covenant should be enjoined even though its effect would be indirectly to enforce the affirmative promise to employ, which type of promise, standing alone, will not be specifically enforced as noted above.[3]

The case, however, remains where the negative performance of the defendant must precede the performance of the plaintiff. There seems little suggestion that the injunction would be denied on the ground of lack of mutuality of remedy.

The defense of allowing the injunction must therefore be that its allowance will probably result in the full performance of

**2.** *Halloran-Judge Trust Co. v. Heath*, 70 Utah 124, 141, 258 P. 342 (1927).

**3.** Williston On Contracts (3rd Ed.) Sec. 1450, p. 1047.

the contract, and that as the defendant, when he made the contract, was willing to run the risk of negative performance on his part, before the plaintiff's performance was due, he cannot fairly complain if equity compels him to take that risk. On the other hand, equity will give specific enforcement only where concurrent or future performance of the plaintiff is well secured to the satisfaction of the court.[4]

Because plaintiff has the status of a tenured teacher, the enforcement of the negative covenant has the indirect effect of reinstating him.[5]

■ Defendant contends there is insufficient evidence to support the judgment on the ground that no document relating to the preference status in hiring was received in evidence. Plaintiff attempted to introduce a copy of the significant provisions which defendant resisted because it had not had an opportunity to check the copy against the original. The original was in defendant's possession. This defendant did not do. At the conclusion of the case, plaintiff again attempted to introduce the copy. The trial court stated it didn't see the materiality, because the case had been reduced to the single issue of whether plaintiff had resigned. Defense counsel agreed that he didn't see the document's materiality. The trial court ruled that in view of the posture of the case and the stipulations that had been made, the exhibit was immaterial.

A review of the record shows sufficient evidence of the provisions, as to preference status, to have been adduced, to sustain the court in its ruling. In addition, it could be noted the position of defendant is extremely inconsistent, viz., objecting to the introduction of a copy of the subject provisions, the original of which it had in its possession, but did not make comparison; joining with

the court in not allowing the admission, because of its immateriality; then urging reversal here, because it was not admitted.

Finally, defendant contends error in deciding the issue of damages as a matter of law. The trial court ruled that since there was insufficient evidence to show mitigation of damages, there was no jury question, and the measure of damages was merely a matter of computation.

According to defendant, plaintiff had the burden to prove he had made reasonable effort to seek other remunerative employment and thus mitigate his damages. He claims plaintiff failed to produce any evidence in this regard, therefore, did not sustain his burden of proof. Defendant argues the jury should have been allowed to determine, whether plaintiff had made a reasonable effort to mitigate his damages; and assess them accordingly.

It seems to be the generally accepted rule that the burden of proof is upon the defendant to show that the plaintiff either found, or, by the exercise of proper industry in the search, could have procured other employment of an approximately similar kind reasonably adapted to his abilities, and that in absence of such proof the plaintiff is entitled to recover the salary fixed by the contract.

As the court put it, plaintiff is *prima facie* entitled to the stipulated compensation for the whole time. If so, the burden of proof in regard to his employment elsewhere, or his ability to obtain employment, must necessarily rest on the defendant. All evidence in mitigation is for a defendant to give. In its nature it is affirmative, and hence it is for him to prove who asserts it.

The above stated affirmative burden requires the defendant to prove "with

**4.** Id., Sec. 1451, pp. 1055–1056.

**5.** For instances of reinstatement of a tenured teacher see: *Thayer v. Anacortes School District*, 81 Wash.2d 709, 504 P.2d 1130 (1972); *University of Alaska v. Chauvin*, Alaska, 521 P.2d 1234, 1239 (1974), wherein the court stated the University had breached its contractual

and constitutional duties to provide continuous employment absent a valid termination. The breach of this duty mandates a remedy that places Chauvin in the position he would have occupied had the University not breached its obligation to employ, i.e., reinstatement with back pay.

reasonable certainty" the amounts which were made or could have been made in mitigation.[6]

In cases where a school teacher has brought an action for damages for wrongful termination, the measure of damages is prima facie the contract price agreed upon for the teacher's services. The breaching party has the burden of proving in mitigation of damages that the employee obtained or might have obtained other employment of a similar character. Absence of such proof requires that the wages or salary contracted to be paid is the measure of damages.[7]

Mitigation of damages is an affirmative defense. Although plaintiff is obligated to minimize his damages, the burden is upon the party whose wrongful act caused the damages to prove anything in diminution thereof.[8]

Because defendant failed to sustain its burden, by producing competent evidence proving plaintiff had not taken reasonable efforts to mitigate his damages; the court properly determined there was no factual issue concerning damages, to submit to the jury.

Another aspect which merits consideration is defendant's failure to plead mitigation of damages in its answer. Rule 8(c), U.R.C.P., requires a party to set forth "any other matter constituting an avoidance or affirmative defense," otherwise, the defense is waived, Rule 12(h), U.R.C.P.

The obligation to plead affirmative defenses is not limited to complete defenses. This seems to be the intendment of the language in Rule 8(c) that 'a party shall set forth . . . any other matter constituting an avoidance or affirmative defense.' Thus, partial defenses should be pleaded affirmatively, whether they are among the defenses enumerated in Rule 8(c) or fall within the catchall clause, since in essence they introduce new matter into the case. The same conclusion follows for matters that tend to mitigate damages. . . .

Neither Rule 8(b) nor Rule 8(c) specifically requires the labeling of partial defenses or matters in mitigation as such. . . . However, the better practice, based on considerations of clarity and accuracy in the pleadings, would be to indicate those matters that are alleged in partial defense or in mitigation of plaintiff's claim.[9]

Since an affirmative defense raises matters outside the scope of plaintiff's prima facie case, any matter which does not tend to controvert the opposing party's prima facie case should be pleaded and is not put in issue by a denial pursuant to Rule 8(b).[10] Accordingly, it has been frequently held that an employer who wishes to obtain the advantage of the rule that a wrongfully

6. Williston On Contracts (3rd Ed.) Sec. 1360, pp. 312–313.

7. 23 A.L.R.3d 1047, Anno.: Elements And Measure Of Damages In Action By Schoolteacher For Wrongful Discharge, Secs. 2, 3, pp. 1051–1052.

8. *Kenaston v. School Administrative District # 40*, Me., 317 A.2d 7 (1974); *State ex rel. Freeman v. Sierra County Board of Education*, 49 N.M. 54, 157 P.2d 234 (1945); *Mass. v. Board of Education of San Francisco Unified Sch. Dist.*, 61 Cal.2d 612, 39 Cal.Rptr. 739, 394 P.2d 579 (1964); *University of Alaska v. Chauvin*, Alaska, 521 P.2d 1234 (1974); *Cobb v. Osman*, 83 Nev. 415, 433 P.2d 259 (1967); *Schiller v. Keuffel & Esser Co., Inc.*, 21 Wis.2d 545, 124 N.W.2d 646 (1963); *Powell v. Brady*, 30 Colo.App. 406, 496 P.2d 328 (1972); *A. T.*

*Klemens & Son v. Reber Plumbing and Heating Co.*, 139 Mont. 115, 360 P.2d 1005 (1961); *Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 481 P.2d 980 (1971); *Enco, Incorporated v. F. C. Russell Company*, 210 Or. 324, 311 P.2d 737 (1957); *Barnes v. Lopez*, 25 Ariz.App. 477, 544 P.2d 694 (1976); *Burr v. Clark*, 30 Wash.2d 149, 190 P.2d 769 (1948); *Sturgeon v. Phifer*, Wyo., 390 P.2d 727 (1964).

9. 5 Wright and Miller, Federal Practice and Procedure, Sec. 1273, pp. 322–323; also see *Camalier & Buckley-Madison, Inc. v. Madison H. Inc.* (1975), 168 U.S.App.D.C. 149, 513 F.2d 407, 419–420, note 92.

10. *General Insurance Co. of America v. Carnicero Dynasty Corporation*, Utah, 545 P.2d 502, 504 (1976).

discharged employee is under an obligation of minimizing damages, by seeking other employment, must raise the matter in his defense pleadings.[11] The court did not err in its ruling that mitigation of damages had not been put in issue.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting).

I am unable to agree with the prevailing opinion. The respondent sued for failure of the appellant (hereafter referred to as the Board) to renew his teaching contract. He was a tenured teacher in the district and was entitled to a contract for the ensuing school year if he made application for a position that he was capable of handling.

The school in which he had been teaching had to be closed because of age and lack of pupils. The teachers were told that if they desired to teach during the next year they should make written application to the Board.

Instead of applying for a position in the district wherein his services would be most useful, Mr. Pratt sent a letter requesting an assignment at the Todd Elementary School in the town of Roosevelt. The Superintendent of the Board discussed the application with Mr. Pratt and expressed doubts as to his ability to handle the work in that school as a new method of teaching was to be utilized which required special training, viz: a "team teaching method." Mr. Pratt testified that "I was pretty disgusted. So I replied that I wouldn't like to work for somebody that didn't want me."

It is obvious that he intended to teach in the new school or not at all. He never made application to teach in any other school in the district and seemed determined to make his own assignment regardless of his ability to do the work.

Shortly after his conversation with the Superintendent, he made application for a teaching position in an adjoining school district, and on August 14, 1973, he sent a letter requesting a hearing on his termination. The request was granted, and he was heard on September 5, 1973. There were no positions available by that time, and it does not appear from the record that he was willing to teach elsewhere than in the new school.

On September 24, 1973, he wrote to the Board *demanding* reinstatement. On April 24 following, he commenced this action to recover damages and to be reinstated as a teacher in the district.

At the court trial of this matter, two stipulations were entered into by Mr. Lybbert, counsel for the Board, and Mr. Dibblee, counsel for Mr. Pratt. It is set forth as follows:

MR. LYBBERT: I understand that the plaintiff is willing to stipulate that they have not proceeded or intended to proceed under the Utah Governmental Immunity Act and have not attempted nor have they complied with the notice provisions of that act.

MR. DIBBLEE: I understand that's correct.

MR. LYBBERT: No. 2: I understand from our previous conversation that you are not making any claim under the provisions of the Utah Orderly School Termination Procedures Act, Section 53–51–1, at 2d.

MR. DIBBLEE: That's correct.

Prior to 1975 the law[1] required that a claim against a political subdivision of the state ". . . shall be forever barred unless notice thereof is filed within ninety days after the cause of action arises; . . . ." The word claim means *any claim* brought against a governmental entity.[2]

By stipulation of counsel at the outset of trial, it was admitted that Mr. Pratt did not comply with the notice provision of law,

11. 22 A.L.R.3d 1047, 1052, note 7, supra.

1. 63–30–13, U.C.A. 1953.

2. 63–30–2(5), U.C.A. 1953.

and, therefore, the claim of being wrongfully discharged is forever barred, even assuming it otherwise had merit.

The jury found that Mr. Pratt was discharged and did not voluntarily resign from teaching. In my opinion, such a finding is entirely contrary to the evidence, and reasonable men could not have concluded as did the jury in this case.

The argument is made that the Utah Orderly School Termination Procedures Act[3] renders the Governmental Immunity Act inapplicable in teacher termination cases. The trouble with that argument is that no claim was made at trial under the Orderly School Termination Procedures Act, and it cannot be injected into the matter on appeal.

It seems obvious to me that Mr. Pratt decided upon his assignment and when he did not get it, he concluded it would be best not to work, and to sue for the salary that he did not earn.

The trial court erred in taking the question of damages from the jury and deciding it as a matter of law. However, since Mr. Pratt is not entitled to recover at all, the question of damages is not important.

I would reverse the judgment but would award no costs.

CROCKETT, J., concurs in the views expressed in the dissenting opinion of ELLETT, C. J.

---

**3.** Title 53, Chapter 51, U.C.A.1953 (1975 Pocket Supp.).