No. 45,724

DON ROCKEY and ELAINE ROCKEY, *Appellants and Cross-Appellees,* v. WALTER BACON and THERESA BACON, *Appellees and Cross-Appellants.*

(470 P. 2d 804)

Opinion filed June 13, 1970.

*Terry G. Paup,* of Jochems, Sargent & Blaes, of Wichita, argued the cause, and *Stanley E. Wisdom* and *Stephen M. Blaes,* of the same firm, were with him on the brief for the appellants and cross-appellees.

*Paul W. Clark,* of Arvin, Arvin & Busey, of Wichita, argued the cause and was on the brief for the appellees and cross appellants.

The opinion of the court was delivered by

FONTRON, J.: This is an action by lessees to recover damages for breach of a farm lease. Recovery was denied and the plaintiff lessees have appealed. A cross appeal has been filed by the defendant lessors.

On December 1, 1961, a farm lease was executed between the defendant lessors, Walter Bacon and Theresa Bacon, and the plaintiff lessees, Don Rockey and Elaine Rockey, in which the Bacons leased to the Rockeys some 124 acres of farm land in Butler County, Kansas, for a term of five years commencing March 1, 1962. The acreage consisted of approximately 50 acres of wheat land, 34 acres for spring crops, and 40 acres planted to alfalfa.

Apparently the Bacons and the Rockeys remained on amicable terms until the middle of 1964, when the Bacons terminated the lease because of alleged breaches and immediately re-took possession of the land. The date of the take-over was approximately May 25 of that year.

Suit was filed by the plaintiffs December 4, 1964, seeking damages of $5,640. In their cross-petition the defendants ask damages on their part amounting to $1,240. Trial was had to the court which made three findings: (1) That no substantial breach of the lease occurred which would warrant termination; (2) that plaintiffs' loss of profits were not established with reasonable certainty, the evidence in regard thereto being too speculative or problematical; (3) that plaintiffs failed to mitigate their loss.

The court wound up by denying relief to all parties, and by dividing the costs between them, while the parties themselves wound up by appealing.

We shall initiate our discussion of the appellate issues by turning first to the Bacons' complaint that the trial court erred in holding there was no breach of the lease sufficient to justify its termination. This contention must be rejected in view of our oft-declared rule that findings which are supported by substantial competent evidence will not be set aside on appeal. (See 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 507.)

Although the Bacons complain of certain farming practices on the part of Mr. Rockey resulting, so they assert, in low crop yields, there is substantial evidence from other farmers in the area that Mr. Rockey, who cultivates extensive acreage, engaged in farming practices which were in substantial accord with practices generally followed in the community. The two specific instances at which the lessors point accusing fingers are miniscule at best, and hardly merit their description here. At any rate it is not the function of this court to weigh conflicting evidence on appeal; that obligation belongs to the trial court. (1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 508.)

A much more serious question inheres in the claims of error advanced by the plaintiffs. They challenge two of the trial court's findings: (1) That their losses were not established with reasonable certainty, and (2) that they had failed to mitigate their damages.

As to the first point, the plaintiffs contend the trial court applied too harsh and rigorous a standard in concluding that the evidence of anticipated profits was too speculative and problematical to establish damage with reasonable certainty. We are obliged to concur in this view.

The general rule with respect to the recovery of loss of profits resulting from the breach of a lease by the lessor is stated in 49 Am. Jur. 2d, Landlord and Tenant, § 351, pp. 363, 364, in these words:

"While there are cases in which the right to recover lost profits as an element of damages for breach of a covenant for quiet enjoyment has been denied, the rule followed by most of the courts, in accord with general principles permitting recovery of profits lost as a result of a breach of contract when such profits can be ascertained with reasonable certainty and their loss reasonably be supposed to have been within the contemplation of the parties at the making of the contract, is that lost profits may be recovered by a tenant for an eviction by the landlord when they may be ascertained with reasonable certainty and they may reasonably be contemplated as a probable result of the breach, or, in other words, when the profits are the object of the contract and so understood by the parties. . . ."

This rule has been followed in Kansas. (See *O'Neal v. Bainbridge,* 94 Kan. 518, 146 Pac. 1165; *Avery v. City of Lyons,* 183 Kan. 611, 331 P. 2d 906, and cases cited therein.)

In *Stewart v. Murphy,* 95 Kan. 421, 148 Pac. 609, the rule was specifically applied to a case involving the breach of a farm lease. The defendant lessor in that action had leased an 80 acre farm to the plaintiff lessee, but was unable to deliver possession of the land because a former tenant held over. The lessee filed suit to

recover loss of prospective profits and, at the trial, was permitted to introduce evidence concerning a crop of hay grown on the land the previous year and the amount of oats that might have been raised on the place during the year covered by his lease. In affirming the lower court's action in refusing to strike this evidence, this court held:

"Loss of profits, when they can be ascertained, is a proper measure of damages where by the act of a lessor the tenant is deprived of the use and occupation of the premises covered by the lease. (Syl. ¶ 3.)

A similar principle is embodied in *Hoge v. Norton*, 22 Kan. 374, where a herd of cattle was taken and held for some time under an order of attachment. The attachment was later dissolved. In an action to recover damages for wrongful attachment, the owner claimed, and was permitted to introduce evidence to establish, that because of inferior range and water at the location where the cattle were kept, they failed to gain weight as they otherwise would. In upholding a verdict in favor of the cattle owner, the court observed:

". . . Of course, absolute certainty is not attainable, as in casting up the figures of an account; but nevertheless there are certain laws of feeding and growth, well understood among cattle-men, and whose results work out with sufficient certainty for business calculations and judicial investigations. . . . It seems clear that the owner is damaged, that the damages may be determined to a reasonable certainty, and that the wrongdoer is bound to make good the damages." (p. 380.)

Our decisions in this area of damages accord with the generally accepted view found annotated in 104 A. L. R. 161-164 and 88 A. L. R. 2d 1041-1042. Among the several authorities set out therein, the following will suffice to put the rule in clear perspective:

In 3 Thompson on Real Property, § 1135, pp. 519, 520, we find this language:

". . . It may be assumed in judicial proceedings that the results of profits, if they are reasonable, definite, and certain, arising from the use of real estate, afford a proper basis for fixing a rental value."

Cited in support of the Thompson text, is *Chew v. Lucas*, 15 Ind. App. 595, 43 N. E. 235, the syllabus in which recites:

"In an action by a lessee of farm land against his lessor, for a breach of contract thereof, evidence of the average yield of the various crops contemplated, the cost of their production and putting same on the market, together with the market value of such crops, when harvested, is competent to show the measure of damages of such breach of contract, where the rent is to be paid by a share of the crop."

The Supreme Court of Tennessee expressed similar views in *Fuqua v. Madewell*, 25 Tenn. App. 140, 153 S. W. 2d 133:

"Under leases of farm lands the lessee is entitled to recover the loss of any profits he might reasonably have made from the demised premises as damages for a failure to receive possession. . . ." (p. 143.)

A case with like overtones came before the Supreme Court of our sister state of Colorado in *Carlson v. Bain,* 116 Colo. 526, 182 P. 2d 909. The action was one seeking damages for defendant's failure to deliver possession of ranch property leased to the plaintiff. In upholding a verdict awarding special damages based on loss of net earnings and profits which the plaintiff allegedly would have realized by operating the ranch property, the Colorado court stated:

". . . The true rule for determining the special damages here is the difference between the rent reserved and the value of the crop and other probable income less the necessary expense in cultivating, planting, harvesting and marketing the crop, and less any expense incurred in producing other income in any other activity in contemplation of the parties." (pp. 532, 533.)

Applying the rationale of the foregoing cases to the evidence of record in this lawsuit, we believe it must be said there was substantial evidence of a loss of future profits which cannot be branded as either speculative or conjectural in a legal sense. The Rockeys had retained possession of the Bacon land under their lease for slightly more than two years, during which time they had raised two crops of wheat and maize and had harvested more than two years' cuttings of alfalfa. They had thus established a basis of past performance from which to predicate reasonable future profits.

From figures presented by Mr. Rockey, which were not contradicted by the defendants, his operation of the Bacon farm from March 1, 1962, to May 25, 1964, was profitable. He testified in detail concerning the annual yield of hay, maize and wheat, and the prices he had received therefor. These figures were substantially corroborated, in addition to being undisputed.

The testimony of Mr. Rockey with respect to the expense involved in mowing, baling and barning the alfalfa hay was not controverted in any way by the defendants or their witnesses. Moreover, his figures regarding the cost of sowing, harvesting and marketing wheat and maize, were not only uncontradicted but were supported by other evidence as well.

In arriving at the amount of damages asserted, Mr. Rockey projected the profits of his past two years of operation into the three years still left on his lease. The figures he used in making the computation were precise as to yields, as to costs of production and marketing, and as to prices received.

In the early case of *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091, this court held:

"Before one may recover damages for loss of profits to an established general business, occasioned by the wrongful acts of another, it must be made to appear that the business had been in successful operation for such period of time as to give it permanency and recognition, and that it was earning a profit which may reasonably be ascertained or approximated." (Syl.)

We have adhered to this position on subsequent occasions. (See *McCracken v. Stewart,* 170 Kan. 129, 223 P. 2d 963; *Master Sales Company v. Sytsma,* 114 Kan. 120, 122, 217 Pac. 291; *Sullivan v. Sproule,* 176 Kan. 274, 279, 269 P. 2d 1015.)

The evidence in the instant action meets the test laid down in the *States* decision. Here, the proof discloses a successful farming operation conducted for a sufficient period of time to provide a basis of permanency from which future profits may reasonably be computed. In our opinion, the court erred in concluding that the evidence was too conjectural to permit allowance of damages for loss of profits.

In addition to finding that the plaintiffs' damages were speculative and conjectural, the trial court found also that the plaintiffs failed to mitigate their damages. This finding is challenged by the Rockeys, and we believe properly so.

There is nothing in the record to indicate that mitigation of damages was ever made an issue in this case. Mitigation was not pleaded by the Bacons as a defense, nor do we find anything in the record which bears in any way upon that issue.

In this jurisdiction, mitigation of damages is an affirmative defense, the establishment of which devolves upon the party asserting it. In *Krehbiel v. Goering,* 179 Kan. 55, 293 P. 2d 255, this subject was examined and the court said:

"Defendants contend the court erred in overruling their motion for judgment notwithstanding the verdict, and predicate their argument on the theory that plaintiff must not only show the amount of damages suffered as a result of the breach, but must further show that such damages could not have been prevented or mitigated. Such is not the general rule of law. Mitigation of damages is a matter of affirmative defense and the burden of proof is upon the party who seeks to establish it. (*Miller v. Kruggel,* 165 Kan. 435, 195 P. 2d 597.)" (p. 58.)

See, also, *Miller v. Kruggel,* 165 Kan. 435, 438, 195 P. 2d 597; *Anderson v. Rexroad,* 180 Kan. 505, 306 P. 2d 137.

The record is entirely bare of any showing that the defendants

asserted mitigation in defense of the plaintiffs' claim. Even had such a defense been interposed, the record discloses no evidence which would have sustained it. Under such circumstances, the trial court's finding that the plaintiffs failed to mitigate their losses cannot stand.

The judgment of the court below is affirmed as to the cross appeal and reversed as to the appeal, and this cause is remanded with directions to the trial court to compute the plaintiffs' damages from the evidence of record in accordance with the views herein expressed.