No. 45,894

VELMA F. KELTY and JOHN M. KELTY, *Appellees,* v. BEST CABS, INC., WILLIAM E. NEWBY and MILTON HETZEL, *Appellants.*

(481 P. 2d 980)

Opinion filed March 6, 1971.

*William A. Wells*, of Wichita, argued the cause, and *Ralph B. Foster*, also of Wichita, was with him on the brief for the appellants.

*Artie E. Vaughn*, of Vaughn, Updegraff and Allison, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, Velma F. Kelty, seeks to recover damages for personal injuries sustained in a collision between a truck in which she was riding as a passenger and a taxicab operated by the defendant, William E. Newby, in the service of the defendant, Best Cabs, Inc. Originally, John M. Kelty joined his wife as a party plaintiff herein, but at some undisclosed and unspecified time he was dismissed as a party and the lawsuit has been continued by Velma F. Kelty alone.

The accident happened in this manner: The truck, with Mr. Kelty at the wheel, was proceeding east on 21st Street in the city of Wichita, when its rear right fender was grazed by the left front fender of the taxicab as Newby, headed north, pulled into the street from a filling station driveway. As a result of the impact, Mrs. Kelty suffered injuries to her back, for which the jury awarded her the sum of $2100. The defendants have appealed from the judgment entered on the verdict.

Several trial errors are charged. It is first contended that the trial court should have declared a mistrial because the subject of insurance was mentioned. The incident occurred in this wise: In response to questioning by defense counsel on cross-examination, the plaintiff's doctor gave this answer:

"A. Well, as I say, I just give what I think of it. Now, for instance, I thought in rotating her spine that she was limited in this way. This is what I think of it now. If the Court or some other insurance company or somebody wants an opinion which I felt they did in this case, then I would refer her on for these measurements that they desire."

No objection was interposed to this answer at the time it was given but at the conclusion of the doctor's testimony the defendants'

counsel, in chambers, moved for a mistrial. In overruling this motion the trial judge observed he would have stricken the answer had a motion therefor been made at the time, but to do so now might only accentuate the reference to insurance. The defendants' counsel thereupon stated he was not asking that the answer be stricken; that striking it would not cure his complaint. Whereupon the court inquired if counsel wanted the jury admonished to disregard the evidence and to this inquiry counsel responded "no."

Obviously the good doctor did not employ the opprobrious term with calculated intent to inject prejudice into the case. We deem the reference to have been inadvertent, casual, and in the context in which it was used, innocuous. The trial court's refusal to declare a mistrial or to grant a new trial amounts to a finding by it that the reference to insurance came into the record unintentionally. (*Caylor v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 210, 368 P. 2d 281.)

Despite our long adherence to the rule that the deliberate injection of insurance coverage into the trial of a damage action presents a basis for a new trial (*Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737; Gard, Kansas Code of Civil Procedure, § 60-454), this court has also held that where such monstrous testimony slips into the record inadvertently, its admission may be cured by a peremptory order of the trial court striking the same and instructing the jury to disregard it. (*Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826; *Coffman v. Shearer*, 140 Kan. 176, 34 P. 2d 97.)

While the offensive evidence was not stricken in the present case, and no instructions were given to the jury to disregard it, this omission was obviously induced by defense counsel's failure to file a motion for such relief and by his statement to the court that he did not wish to have the jury admonished. A similar situation was presented in *Caylor v. Atchison, T. & S. F. Rly. Co.*, supra, where trial counsel, after testimony concerning insurance had gotten into the case, requested that no further reference thereto be made by the court, as such would only tend to emphasize the subject of insurance in the minds of the jury. We held that under those circumstances, and giving consideration to the evidence of record and the size of the verdict, no prejudicial error could be said to have occurred.

In *Thompson v. Barnette*, 170 Kan. 384, 227 P. 2d 120, defense counsel refused to consent to the court's proposal to strike certain references to insurance occurring during the trial and to instruct

the jury to disregard them, the reason for counsel's refusal being that the damage had already been done and that further reference would merely magnify and emphasize the fact of insurance coverage. In upholding a judgment in plaintiff's favor this court said:

". . . [A]s we read this record, it is not made to appear that any prejudice resulted from what manifestly appears to have been an inadvertent reference on the part of plaintiff while on the witness stand. Indeed, the trial court in denying the motion for a mistrial and to discharge the jury commented that he was well satisfied there had been no intentional misconduct by counsel and that the mention of insurance was purely inadvertent. We feel compelled to agree. . . ." (p. 389).

See, also, *Parnell v. Security Elevator Co.*, 174 Kan. 643, 258 P. 2d 288.

The odious expression was uttered but once in the instant case—by plaintiff's own doctor in response to cross-examination by the defendants' counsel. Evidence of the cab driver's negligence was impressive, as we view it, and the $2100 verdict quite modest in view of the $30,000 sought in relief. We cannot say the verdict reflects passion or prejudice resulting from mention of the malignant term. K. S. A. 60-2105 directs that trial irregularities be disregarded where they do not appear to have prejudicially affected the substantial rights of the complaining party and we believe the statute's admonition should be applied here.

The defendants next complain of the trial court's refusal to submit a requested instruction to the effect that if the approach of the defendants' vehicle was visible to Mrs. Kelty, the jury should consider whether or not she exercised reasonable care for her own safety in failing to warn her husband of its approach. Under the circumstances shown of record in this case we think the point is without merit.

It is true generally that a passenger in a motor vehicle rests under a duty to exercise reasonable care for his own safety and is guilty of negligence should he fail to warn the driver of approaching imminent danger. (*Sander v. Union Pacific Rld. Co.*, 205 Kan. 592, 596, 470 P. 2d 748; *Knudsen v. Hanlon; Knudsen v. Balderston*, 160 Fla. 566, 36 So. 2d 192.) However, we are unable to say that the evidence in this case required that the jury be instructed to such effect.

The evidence infers that the taxicab did not move from its moorings from the time the Keltys first saw it sitting in a filling station driveway just 20 feet south of the street, until the Kelty

truck was passing the driveway entrance. The left front of the taxi struck the truck's right rear fender back of the wheel. Mr. Newby, the cab driver, testified he had looked west, after picking up a fare, and had seen the truck at a distance; that after being told where his passenger wanted to go he looked east and saw nothing; and that as he entered the street he looked again to the west and the truck was right on him. He subsequently pleaded guilty to and paid a fine for failure to yield the right of way.

We believe the evidence was not sufficient to suggest to Mrs. Kelty the presence of any imminent danger against which she should have warned her husband. Hence, there was no reason for the court to submit the requested instruction. The rule is that instructions are to be limited to those issues which are supported by evidence. (See 5 Hatcher's Kansas Digest [Rev. Ed.] Trial, § 205.)

The mere presence of the cab standing in the driveway leading into the street was not of itself a menacing danger.

K. S. A. 8-553 provides as follows:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on said highway."

Kansas law is clear that a motorist may rely on the assumption that other motorists will observe the rules of the road, and the laws and regulations which govern traffic, and he is not guilty of negligence in that reliance unless and until he has knowledge to the contrary. (*Harbaugh v. Darr*, 200 Kan. 610, 438 P. 2d 74.) Mrs. Kelty, although a passenger, was equally entitled with the driver to assume that the taxicab sitting in the filling station driveway near the street and which was not in motion during the time she saw it—would not suddenly, and in violation of the foregoing statute, be driven into the street and against the vehicle in which she was riding.

The trial court properly instructed the jury with respect to the law regarding negligence and contributory negligence and we discern no error in its failure to submit the instruction requested by the defendants.

The defendants also requested that an instruction be given on the duty to mitigate damages, and complaint is made of the court's refusal to instruct the jury in this respect. But again, as we view the record, no basis was provided for an instruction of this nature. Although the two specialists called by the defendants testified that Mrs. Kelty's condition could have been improved by taking certain

exercises, there was no evidence whatever that she was so advised by either of them—or by her own doctor—or that she had failed to follow any medical advice received or refused to pursue any recommended course of treatment. Not only must mitigation be pleaded as a defense, the burden of proving it rests upon the party asserting it. (*Rockey v. Bacon,* 205 Kan. 578, 470 P. 2d 804.)

Finally it is argued that the court should have held as a matter of law, and should have instructed the jury, that Mrs. Kelty and her husband were engaged in a joint venture at the time of the collision and that the husband's negligence, if any, was to be imputed to his wife. The defect in the defendants' position is, we think, simply this: The determination of whether two or more parties are engaged in a joint enterprise at any given time is generally for the jury to make and it is only when reasonable minds cannot be said to differ that the question may be resolved as a matter of law. (*Bradshaw v. Payne,* 111 Kan. 475, 207 Pac. 802.)

Where the relationship between parties alleged to be joint adventurers is that of driver and passenger, the crux of the matter is whether the latter has equal right with the former to manage and control the vehicle and its movements. In 1 Blashfield Automobile Law and Practice, § 62.25 the rule is stated in this way:

"Generally, the test of joint enterprise between the driver and one to whom his negligence is sought to be imputed is whether they were jointly operating and controlling the movements of the vehicle in a common purpose, or had equal right to do so." (p. 483.)

The author goes on to say that the question of whether the parties are jointly engaged in a common enterprise so as to render the passenger chargeable with the driver's negligence, is usually one of fact.

In *Schmid v. Eslick,* 181 Kan. 997, 317 P. 2d 459, this court had occasion to plumb the area of joint enterprise and imputed negligence in some depth and, speaking through Mr. Justice Fatzer, had this to say:

". . . To constitute a joint enterprise between a passenger and a driver of an automobile, there must be a common purpose for which they jointly use and occupy the motor vehicle so as to give each the equal privilege and right to control and manage its operation. [Citing cases.] Under the doctrine of joint enterprise whereby the negligence of one party is imputed to the other upon the relation of agency, there must be equal responsibility for the negligent operation of the vehicle, and there can be no equal responsibility unless there is an equal right to control.

. . . . . . . . . . . . . . . . .

"The essential question is whether, under the facts and circumstances, the driver and the passenger can be found by implication to have agreed to have an equal privilege and right to manage and control the vehicle. . . ." (pp. 1002, 1003.)

There is evidence in the instant case that Mr. and Mrs. Kelty worked on paperhanging jobs together—he running the business and she working as a helper, or assistant. Accounts and records of the business were kept together, neither party separately accounting for their joint efforts in the production of income. Joint tax returns were filed and title to the truck was held jointly.

But there is also evidence that Mr. Kelty made the decisions, controlled what jobs were taken and what work was done, and that he did the driving. Although the Kelty couple was on its way to work the morning of the accident, Mr. Kelty, who was driving the truck, testified he was solely in control of the driving on the trip. Under all the attending circumstances we believe the trial court did not err in refusing to rule, as a matter of law, that the Keltys were engaged in a joint enterprise or adventure at the time of Mrs. Kelty's injury. The issue was properly submitted to the jury under instructions which are not challenged.

We conclude that prejudicial error has not been established, and accordingly the judgment of the trial court is affirmed.