Curtis D. BENNETT, Plaintiff,

v.

EMERSON ELECTRIC
CO., Defendant.

Case No. 00–2335–JWL.

United States District Court,
D. Kansas.

Feb. 12, 2002.

David W. Hauber, Baty, Holm & Numrich, P.C., Kansas City. MO, Casey L. Griffith, Carstens, Yee & Cahoon, LLP, Dallas, TX, for plaintiff.

John D. Dunbar, Kelly S. Moothart, Daniels & Kaplan, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant, his former employer, alleging age discrimination, fraudulent and negligent misrepresentation, and breach of contract. Defendant moved for summary judgment on all claims and the motion was denied in its entirety. *See Bennett v. Emerson Elec. Co.,* 160 F.Supp.2d 1244 (D.Kan.2001).[1] Plaintiff's claims were then tried to a jury. The jury returned a verdict in favor of plaintiff on his breach of contract claim and judgment was entered in the amount of $236,707.49 on that claim. The jury found in favor of defendant on plaintiff's age discrimination and misrepresentation claims. This matter is now before the court on defendant's renewed motion for judgment as a matter of law, for new trial, or for remittitur (doc. # 113). For the reasons set forth below, the motion is denied in its entirety.

## I. Background

For purposes of defendant's motion, only a brief recitation of the evidence presented at trial is necessary. Plaintiff be-

---

1. Plaintiff also initially asserted a claim under the Kansas Wage Payment Act, K.S.A. §§ 44–313 et seq. Although the court denied summary judgment on the claim, the court granted defendant's motion for judgment as a matter of law with respect to that claim at the close of plaintiff's case.

gan working for defendant on November 15, 1998 and he was hired to develop and maintain defendant's Trailblazer program. The Trailblazer program was essentially a business arrangement between defendant and Home Depot whereby defendant agreed to partially sponsor the Home Depot NASCAR vehicle and to supply personnel to promote defendant's RIDGID line of power tools at NASCAR events and in Home Depot stores.

Plaintiff testified at trial that during his interview for the position, he was promised an employment contract of at least three years—the length of the initial contract between defendant and Home Depot. Specifically, plaintiff testified that he advised Tim Ferry, defendant's vice president and general manager, that he was not looking for a short-term, temporary position and that he wanted an opportunity to "finish out [his] working career." According to plaintiff, Mr. Ferry responded that defendant was on the verge of securing a three-year contract with Home Depot, suggesting that plaintiff would have a job for at least the duration of the Trailblazer program. Moreover, Mr. Ferry testified that it was his intent to keep all Trailblazer employees, including plaintiff, on board at least for the length of the program and that he may have conveyed that intent to interviewees, including plaintiff.

Defendant terminated plaintiff's employment just three months after hiring him. Defendant's witnesses testified that plaintiff was discharged for numerous performance problems. In any event, plaintiff did not obtain another job until several months later. Specifically, plaintiff began working for ShopSmith in August 1999. He continued working at ShopSmith until July 16, 2000 when plaintiff suffered an on-the-job injury. Specifically, plaintiff was injured when a 250–pound machine that he was loading into a van slipped, knocking plaintiff to the ground. Plaintiff has not worked since his accident.

## II. Motion for Judgment as a Matter of Law

■ Judgment as a matter of law "should be cautiously and sparingly granted," *Zuchel v. City & County of Denver,* 997 F.2d 730, 734 (10th Cir.1993), and is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Riggs v. Scrivner, Inc.,* 927 F.2d 1146, 1149 (10th Cir.1991). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of Topeka,* 814 F.2d 1412, 1418 (10th Cir.1987). In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988). Nevertheless, the court must find more than a mere scintilla of evidence favoring the non-movant; the court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988).

In essence, the court must affirm the jury verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1546 (10th Cir.1996). Conversely, the court must enter judgment as a matter of law in favor of the moving party if "there is no legally sufficient evidentiary basis ... with respect to a claim or de-

fense ... under the controlling law." *Id.* at 1546–47.

## A. Insufficient Evidence of Three–Year Contract

■ According to defendant, there is no legally sufficient evidentiary basis for a reasonable jury to have found in favor of plaintiff on his breach of contract claim. In large part, defendant simply rehashes various arguments that it made in support of its summary judgment motion. For example, defendant again emphasizes that Dave Pringle, defendant's president, and Tim Ferry denied making the specific representations that plaintiff alleges they made during his initial interviews with defendant. The court rejected this argument at the summary judgment stage and does so again here. While Mssrs. Pringle and Ferry may have denied making any statements to plaintiff concerning a three-year contract or other term of employment, plaintiff presented evidence to the jury from which it could have reasonably concluded that plaintiff was promised a position with defendant for as long as the Trailblazer program lasted, or a minimum of three years. Plaintiff testified, for example, that he advised Mr. Ferry that he was not looking for a short-term, temporary position and that he wanted an opportunity to "finish out [his] working career." *See* Trial Tr. at 116. According to plaintiff, Mr. Ferry responded that defendant was going to secure a three-year commitment with Home Depot, suggesting that plaintiff would have a job for at least the duration of the Trailblazer program. *See id.* at 116–117. In any event, despite his subsequent denials, Mr. Ferry testified in his deposition (testimony that was presented to the jury during plaintiff's case-in-chief) that it was his intent to keep all Trailblazer employees, including plaintiff, on board at least for the length of the program. *See* Ferry Depo. at 65. Mr. Ferry further testified that he may have

conveyed that intent to interviewees, including plaintiff. *See id.* From this evidence, the jury could reasonably find the existence of a three-year contract.

Defendant also contends that plaintiff failed to present sufficient evidence of a "meeting of the minds" between the parties. This subjective theory of contract formation has been rejected by contemporary contract experts and the Restatement. *See* E. Allan Farnsworth, *Contracts* § 3.6 (2d ed.1990); Restatement (Second) Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). The prevailing approach is an objective theory of contract formation whereby so long as one party intended to engage in the actions by which assent was apparently manifested, "[t]here is no further requirement that the actions were done with the intention of assenting to an agreement" and "[i]t is enough that the other party had reason to believe that the first party had that intention." Farnsworth, *supra,* at § 3.6. Moreover, under this objective theory of assent, the fact that one party "gives the matter no thought does not impair the effectiveness of one's assent, for there is no requirement that one intend or even understand the legal consequences of one's actions." *Id.* With this framework in mind and in light of the evidence of Mr. Ferry's statements to plaintiff during the interview process, the jury's conclusion that an employment contract existed is a reasonable one.

Defendant also repeats its argument that the letter sent to plaintiff confirming defendant's offer of employment is devoid of any reference to a three-year commitment. According to defendant, the court "can assume" from this omission that the parties never agreed to a three-year con-

tract. The court rejected this argument at the summary judgment stage and the jury rejected it at trial.

As it did in its motion for summary judgment, defendant again contends that it is unreasonable to believe that plaintiff was promised a three-year contract of employment when no other employee of defendant has or has had an employment contract for a specific term. The court, then, reiterates the conclusion it made at the summary judgment stage—the mere fact that other employees were not given oral assurances of continued employment has no bearing on whether plaintiff was given such assurances, particularly in light of plaintiff's evidence (evidence that was also presented at trial) that plaintiff's position and, more specifically, the hiring for plaintiff's position, was simply not analogous to other positions in defendant's organization. More importantly, defendant argued at trial that no other employees had employment contracts for specific terms. The jury heard this evidence and, apparently, gave little weight to it.

Finally, defendant rehashes its argument that, even if a contract existed, plaintiff was required to perform his job duties in order to keep his job; he performed poorly and, thus, his discharge was justified. The court noted in its summary judgment order that whether plaintiff was performing his assigned duties was a question of fact for the jury. The jury has now decided that issue in favor of plaintiff.

Among the few new arguments presented by defendant is that plaintiff, in the written materials that he sent to defendant prior to his interview, included a document entitled "Desired Job Characteristics" but the document is devoid of any reference to a three-year contract or any other specific term. According to defendant, then, this document demonstrates that plaintiff was not seeking a contract for a specific term (and, thus, apparently, did not receive such

a contract). Of course, this document was admitted as an exhibit at trial and defendant presented the same argument to the jury that it now presents to the court. The jury rejected the inference proposed by defendant.

Defendant next asserts that Exhibit 411A is sufficient to disprove plaintiff's breach of contract claim. Exhibit 411A is a letter from plaintiff to Mr. Pringle following defendant's termination of plaintiff's employment. In the letter, plaintiff states that there was "no doubt when I accepted this position that it was for a minimum of one year, with the strong possibility of going two additional years without any problem." According to defendant, this document demonstrates that plaintiff did not even believe that he had a three-year contract of employment. As plaintiff explained at trial, however, when he initially discussed his employment with defendant, the contract between defendant and Home Depot had not been finalized, but defendant indicated to plaintiff that it was attempting to secure (and believed it was very likely to secure) a three-year commitment from Home Depot. His letter to Mr. Pringle, then, merely reflected the fact that although the three-year commitment with Home Depot was not finalized at the time plaintiff was hired, the understanding between defendant and plaintiff at the time of plaintiff's hiring was that if the three-year commitment was secured as defendant believed it would be, then plaintiff's position would be secure for that time as well. In fact, Exhibit 411A also refers to defendant's "commitment" to plaintiff for "the initial three years" of the Trailblazer program. Defendant's argument on this point, then, is rejected.

## B.  Insufficient Evidence of Damages

Defendant next contends that plaintiff's evidence of damages is insufficient as mat-

ter of law and that, as a result, plaintiff is not entitled to recovery any damages for lost wages or benefits.[2] With respect to plaintiff's evidence of lost wages, defendant maintains only that plaintiff's evidence was "contradictory" and "unreliable" in that plaintiff's testimony conflicted with representations he made to the Social Security Administration on his application for disability benefits. While defendant attempted to establish at trial that plaintiff's evidence of lost wages was inconsistent, *see, e.g.,* Trial Tr. at 223–30, plaintiff explained to the jury the alleged discrepancies between his testimony and his Social Security application. *See id.* at 283–88. In other words, defendant has already made this argument to the jury and the jury rejected it. In short, there was competent and adequate evidence before the jury regarding plaintiff's wages.

■ With respect to plaintiff's evidence regarding lost benefits, defendant complains that plaintiff "offered only his own testimony claiming his benefits at Emerson were a percentage of his salary without any foundation for this opinion." *See*

Def. Brief at 11. This statement is incorrect. While the jury certainly heard plaintiff's testimony regarding his benefits, it also had the opportunity to review Exhibit 12—a budget prepared by Brian Sponsler that set out specific wages, bonuses, cost of benefits and car allowances for plaintiff and every other Trailblazer employee. Exhibit 12 specifically states that plaintiff's total benefits package was $28,000. During his testimony, plaintiff used Exhibit 12 to present the jury with his lost wages and benefits information. *See* Trial Tr. at 153–54. Moreover, defendant did not object to plaintiff's use of Exhibit 12 nor did it present any evidence suggesting that the figures listed on Exhibit 12 were inaccurate.[3] Using Exhibit 12 as a basis, then, plaintiff was permitted to testify that his benefits were "roughly a third" of his total compensation package. *See* Trial Tr. at 210.[4]

■ Defendant then contends for the first time in its reply brief that the jury's verdict is inconsistent and,[5] in any event, bears no relation to plaintiff's evidence that his benefits were one-third of his total

---

**2.** While defendant mentions in its opening paragraph that plaintiff's evidence regarding his car allowance is also insufficient, defendant fails to address this specific component of plaintiff's damages at any other time in its papers.

**3.** Defendant makes much of the fact that Exhibit 12 was merely a "pro forma" budget. Although Mr. Ferry testified that a pro forma budget is simply a forecast or a rough estimate of expenses, defendant did not offer any evidence that Exhibit 12 was inaccurate or that the expenses actually incurred were somehow different than projected in Exhibit 12. Thus, the jury could reasonably conclude that the expenses listed in Exhibit 12, including plaintiff's benefits information, were accurate.

**4.** Exhibit 12 lists plaintiff's salary as $70,000; plaintiff's benefits as $28,000; plaintiff's bonus as $5000; and plaintiff's car allowance as $6000. Thus, as plaintiff testified, a benefits

package of $28,000 is "roughly a third" of the total compensation package of $81,000.

**5.** Defendant did not challenge the verdict before the jury was discharged, but was not required to do so. Although a party waives its right to challenge an inconsistent verdict based on a general jury verdict under Federal Rule of Civil Procedure 49(b) if not timely raised, this rule does not apply to special verdicts under Federal Rule of Civil Procedure 49(a). *See Heno v. Sprint/United Management Co.,* 208 F.3d 847, 851 (10th Cir. 2000). A party challenging an inconsistent verdict based on a special verdict "is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court." *Id.* at 851–52 (citations omitted). The jury here was provided with a special verdict form.

compensation package. Specifically, defendant directs the court to question 7(a) and (b) on the verdict form. Question 7(a) asked the jury to calculate plaintiff's damages from the date of his discharge to the date of plaintiff's injury. In response, the jury calculated plaintiff's lost wages for that time period as $49,874.32; plaintiff's lost car allowance as $8500.00; and plaintiff's lost benefits as $39,666.61. Question 7(b) asked the jury to calculate plaintiff's damages from the date of plaintiff's injury to the date of the verdict. In response, the jury calculated plaintiff's lost wages for that time period as $93,333.28; plaintiff's lost car allowance as $8000.00; and plaintiff's lost benefits as $37,333.28.

According to defendant, then, the jury in response to question 7(a) calculated plaintiff's lost benefits as 68 percent of plaintiff's lost wages (including car allowance) rather than the one-third figure that plaintiff presented at trial. By contrast, the jury in response to question 7(b) calculated plaintiff's lost benefits as 37 percent of plaintiff's lost wages and car allowance. The court rejects defendant's argument for two reasons. First, the court does not consider issues and arguments raised for the first time in a reply brief. *See Anderson v. Farmland Indus., Inc.,* 70 F.Supp.2d 1218, 1228 (D.Kan.1999) (and cases cited therein). Second, defendant's comparison is simply not a proper one. The jury was not instructed to base its calculation of plaintiff's lost benefits as a percentage of plaintiff's lost wages and there would be no basis for doing so. During the time period reflected in question 7(a), for example, plaintiff's lost wages were not as great because he was earning wages at ShopSmith. For that same time period, however, his lost benefits, by comparison, were great because the benefits he received from ShopSmith were not nearly as favorable as the benefits he received from defendant. By contrast, plaintiff's lost wages during the time period reflected in question 7(b) were greater because he was not working at all and was earning no other wages. This, then, explains the difference in the percentages calculated by defendant.

■ Defendant also argues that plaintiff's evidence concerning his replacement benefits with ShopSmith is insufficient. Specifically, defendant contends that plaintiff's only evidence of such replacement benefits was his testimony that he paid $400.00 per month for dental and health insurance. Defendant complains that plaintiff offers no documentation to support his testimony.[6] Defendant, however, fails to direct the court to any authority suggesting that plaintiff needs to have documentation supporting his testimony. Moreover, defendant failed to present any evidence showing that plaintiff in fact did not pay $400.00 per month for replacement coverage. Thus, there was sufficient evidence before the jury on this issue.

As an alternative to its argument that plaintiff's evidence of damages is insufficient, defendant argues that plaintiff's damages should be cut off as of November 15, 1999 one year after plaintiff was hired. According to defendant, Exhibit 411A demonstrates that, at the very most, plaintiff had a one-year employment contract

---

**6.** Defendant also complains in its papers that "plaintiff's expert calculated plaintiff's benefits at ShopSmith by using the same percentage of his salary at ShopSmith as was used in estimating his benefits at Emerson." The court need not address this argument as plaintiff's expert never testified at trial. Moreover, when plaintiff's counsel asked plaintiff to simply assume that his benefits with ShopSmith were, like his benefits with defendant, one-third of the total package, the court sustained defendant's objection and advised plaintiff's counsel that he needed to provide a factual basis for such an assumption. *See* Trial Tr. at 210. Plaintiff's counsel then abandoned that approach. *See id.*

with defendant and that plaintiff's damages should be limited to the benefit of that bargain. As explained above, the court (and the jury) has rejected defendant's construction of Exhibit 411A. *See supra* p. 1172. The jury reasonably concluded that plaintiff's contract was for three years.

■ Defendant presents one more alternative argument regarding plaintiff's damages. Specifically, defendant contends that plaintiff's damages should be substantially decreased because plaintiff failed to mitigate his damages after his discharge from defendant and he has failed to seek alternative employment since his work-related injury in July 2000. With respect to plaintiff's efforts immediately following his discharge from defendant, the burden was on defendant to prove that he failed to mitigate his damages. *See Leavenworth Plaza Assocs., L.P. v. L.A.G. Enterprises,* 28 Kan.App.2d 269, 272, 16 P.3d 314 (2000) (citing *Kelty v. Best Cabs, Inc.,* 206 Kan. 654, 659, 481 P.2d 980 (1971); *Rockey v. Bacon,* 205 Kan. 578, 583, 470 P.2d 804 (1970)). Defendant devoted very little, if any, time to this point at trial and, ultimately, failed to carry its burden. Moreover, with respect to plaintiff's efforts to find alternative employment after his July 2000 injury, the court—prior to trial—concluded that plaintiff would be entitled to recover the full amount of his loss without any mitigation at all. *See infra* section D.

## C. Plaintiff's July 2000 Injury

■ As it did prior to trial in connection with its motion in limine and again at the close of plaintiff's case, defendant contends that its backpay liability should be cut off as July 2000, the time when plaintiff was injured on the job and became unable to work. During the limine conference, the court recognized the general rule that backpay liability cuts off when the plaintiff, due to an injury or disability, becomes unavailable for work but explained that if the fact finder concluded that plaintiff's injury would not have occurred but for defendant's unlawful discharge, then the back pay period would not terminate. *See* Limine Tr. at 31–32; 47–48. In support of its decision, the court relied in large part on the Tenth Circuit's decision in *Whatley v. Skaggs Companies, Inc.,* 707 F.2d 1129 (10th Cir.1983). In *Whatley,* the Tenth Circuit held that the trial court did not abuse its discretion in refusing to reduce the defendant's backpay liability for the period when the plaintiff was disabled because the court, as the finder of fact, found that the plaintiff's disability would not have occurred but for the unlawful termination. *See id.* at 1138 & n. 8. Based on the *Whatley* decision, the court advised defendant that it might convince the jury that plaintiff would have been injured despite defendant's conduct, but that the court could not so find as a matter of law. *See* Limine Tr. at 47–48. Moreover, in ruling on defendant's motion for judgment as a matter of law at the close of plaintiff's case, the court concluded that the evidence presented at trial was sufficient to permit the jury to conclude that but for plaintiff's discharge he would not have been injured. In short, then, the court held that if plaintiff carried his burden of proof that the injury would not have occurred but for his unlawful termination, then defendant's backpay liability would not cease.

The court then propounded a verdict form that set forth the following question to the jury:

6. Do you find that plaintiff has proved, by a preponderance of the evidence, that his July 2000 injury would not have occurred but for defendant's unlawful termination of plaintiff's employment (i.e., that plaintiff would not have been injured in July 2000 had he remained employed with defendant)?

The jury answered this question in the affirmative and, thus, was permitted to award damages to plaintiff beyond July 2000. Moreover, the jury's finding was supported by ample evidence. As plaintiff testified at trial, he was not required to do heavy lifting on his own during his employment with defendant—a Trailblazer team of several individuals worked together in connection with such tasks. By contrast, plaintiff was required to do heavy lifting on his own during his employment with ShopSmith and it was during one of these tasks that he was injured. In essence, then, plaintiff testified that he would not have been in the position to have a piece of heavy equipment fall on him had he remained employed with defendant. The jury obviously credited this testimony.

Nonetheless, defendant insists in its papers that plaintiff failed to establish any causation between his discharge and his work-related injury.[7] As it did at trial, defendant again argues that plaintiff's "admissions" in his Social Security application demonstrate that his job with defendant and his job with ShopSmith were one and the same and, thus, the injury would have happened in any event. The jury clearly rejected this argument and defendant offers no explanation why the jury's finding should be disturbed.[8] Defendant also maintains that plaintiff's injury was un-

foreseeable, that it was a "freak" accident.[9] The court disagrees. It is highly foreseeable that an individual required to do repeated, heavy lifting of equipment without any assistance from others might suffer the type of injury suffered by plaintiff.

■ Finally, defendant contends that any lost wages and benefits recoverable under the Kansas Workers Compensation Act should not also be recoverable here. In the same vein, defendant argues that plaintiff should not be permitted to recover any damages after July 2000 because he received disability benefits during that same time period. In support of these arguments, defendant relies on *Sanjuan v. IBP, Inc.*, 160 F.3d 1291 (10th Cir.1998). In *Sanjuan*, a retaliatory discharge case, the Tenth Circuit upheld the district court's use of a jury instruction that "merely informed the jury that the Workers Compensation Act compensates workers for wages lost as a result of their work injuries, and that such damages are properly awarded under the Act rather than in an action for retaliatory discharge." *See id.* at 1300. As the court continued:

Damages for injuries arising in the scope of employment are recoverable only under the Workers' Compensation Act. A plaintiff may not recover wages in a retaliatory discharge action for a

7. In its reply brief, defendant asserts for the first time that question 6 on the verdict form was erroneous in that it permitted the jury to find for plaintiff without any showing of a causal link between his discharge and his injury. At no time during the instruction conference (or at any other time) did defendant object to the verdict form in general or to question 6 specifically. Thus, this argument has been waived. *See Johnson v. Unified Gov't of Wyandotte County/Kansas City, Kansas,* 180 F.Supp.2d 1192 (D.Kan.2001) (and cases cited therein). In any event, question 6 clearly incorporates the causation concept as it required the jury to find that plaintiff's injury would not have occurred "but for" plaintiff's discharge.

8. Defendant complains that "plaintiff did not provide any medical testimony linking his injury to Emerson." This argument is borderline frivolous and the court would not have permitted such testimony in any event.

9. In the same paragraph of its papers, defendant suggests that plaintiff's injury did not even happen. Specifically, defendant states: "Plaintiff produced no witnesses to this alleged 'accident,' only his own testimony. If it occurred, this was a freak accident...." Defendant's argument is completely frivolous. There was no evidence at trial even remotely suggesting that the accident and resulting injury described by plaintiff did not occur.

period of time during which he received temporary total disability compensation. *Id.* (citing *Hill v. IBP, Inc.*, 881 F.Supp. 521, 525 (D.Kan.1995)). *Sanjuan*, however, does not stand for the proposition that the receipt of disability benefits from one employer acts as a complete bar to the recovery of lost wages and benefits from another employer. In fact, as the Circuit noted in *Sanjuan*, Kansas follows the collateral source doctrine. *Id.* at 1299–1300 (citing *Anderson v. National Carriers, Inc.*, 10 Kan.App.2d 203, 695 P.2d 1293 (1985)). Under that rule, benefits received from a source "wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." *Id.* at 1299. Here, assuming that plaintiff received disability benefits paid for by ShopSmith, those benefits would not preclude plaintiff's ability to recover against defendant. Moreover, while the court suggested during the limine conference that defendant could present evidence of collateral source benefits in connection with any post-trial motion so that the court could determine whether an offset was appropriate, defendant has failed to present the court with any evidence that plaintiff actually received such benefits let alone the amount of such benefits. Thus, even if the court were inclined to offset disability benefits, defendant has failed to provide the court with the requisite information to do so.

### D. Limiting Plaintiff's Recovery to the Damages Set Forth in the Pretrial Order

■ Finally, defendant contends that plaintiff's damages must be limited to the amount set forth in the pretrial order and that the court erred in permitting plaintiff to amend the pretrial order on the eve of trial. By way of background, the pretrial order entered on June 6, 2001 set forth plaintiff's damages as $137,185.00. Before trial, the court allowed plaintiff to amend the damages figure to $679,667.00 to prevent manifest injustice and to conform with the evidence that was presented during the discovery phase of the case. *See* Transcript of Telephone Hearing on Oct. 29, 2001.

Specifically, the court determined that the February 2001 report of plaintiff's expert set forth two separate calculations of damages—one calculation that contemplated a recovery of $137,185.00 (a figure that took into account income that plaintiff could have earned through alternative employment) and one calculation that contemplated a recovery of $679,667.00 (a figure that did not offset any wages that might have been earned from alternative employment). *See id.* As the court noted during the October 29, 2001 hearing, defendant was on notice as of February 2001 that plaintiff's claim for damages was set forth in two alternative theories. *See id.* In fact, defendant's counsel inquired about the $679,667.00 figure during the deposition of plaintiff's expert. *See id.* In essence, then, the court concluded that the omission in the final pretrial order of the $679,667.00 figure was simply a mistake on the part of plaintiff and that there was no unfair prejudice to defendant in permitting the amendment. *See id.*

In its present motion, defendant simply rehashes the arguments it made during the October 29, 2001 hearing-arguments that the court obviously rejected at that time. Significantly, defendant does not assert in its papers that it was in any way prejudiced by the amendment, except for the fact that plaintiff ultimately recovered more than the $137,185.00 figure. Defendant, however, does assert that the $679,667.00 figure is otherwise inappropriate because it does not take into account any interim earnings that plaintiff could have earned through mitigation efforts and, according to defendant, plaintiff clear-

ly failed to mitigate his damages. The court has previously rejected this argument as well. Specifically, the court held during the October 29, 2001 telephone conference that if plaintiff carried his burden of proof that the July 2000 injury would not have occurred but for defendant's conduct, then "plaintiff would be entitled to recovery of the full amount of his loss without mitigation because in fact he through no fault of his own was unable to continue to mitigate." *See id.* Because the jury specifically found that plaintiff's July 2000 injury would not have occurred but for defendant's unlawful termination of plaintiff's employment,[10] plaintiff was entitled to recover the full amount of his loss.

### III. Alternative Motion for New Trial

Defendant also moves the court for a new trial on plaintiff's breach of contract claim. In support of its motion, defendant simply "restates and adopts its arguments in support of its renewed motion for judgment as a matter of law." *See* Def. Brief at 19–20. For the reasons set forth above, then, the court rejects defendant's motion for a new trial.

### IV. Alternative Motion for Remittitur

As an alternative to its motions for judgment as a matter of law and for a new trial, defendant moves the court for remittitur of the jury award "based upon all of the reasons set forth above and incorporated by this reference." *See* Def. Brief at 22. Because the court has rejected each of defendant's arguments in connection with its motion for judgment as a matter of law and for new trial, the court similarly rejects defendant's motion for remittitur.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's renewed motion for judgment as a matter of law,

for new trial, or for remittitur (doc. # 113) is **denied.**

**IT IS SO ORDERED.**

---

10. See question 6 on the verdict form.